Karoly Law Firm, LLC
John P. Karoly III, Esquire
Pa. I.D. No. 204531
527 Hamilton Street
Allentown, Pennsylvania 18101
(610) 437 – 1252

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTEBAN RIVERA<br>2024 West Greenleaf Street<br>Allentown, Pennsylvania 18104 | Civil Action No. |
| Plaintiff, | |
| v. | |
| PROGRESSIVE CASUALTY INSURANCE CO.<br>t/d/b/a, PROGRESSIVE ADVANCED INS. CO.,<br>300 North Commons Boulevard<br>Mayfield Village, Ohio 44143 | |
| Defendant. | JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES, the Plaintiff, Esteban Rivera, by and through his legal counsel, the Karoly Law Firm, LLC, and does hereby allege and aver the following in support of his claims against the above named Defendant:

## I.    PRELIMINARY STATEMENT

1. This is a civil action for an award of compensatory, statutory, and treble damages, together with interest, costs and reasonable attorney fees for the Defendant's breach of an insurance contract and bad faith insurance practices arising out of Defendant's failure and/or refusal to pay Plaintiff for his loss of his vehicle.

2. Defendant denied Plaintiff's insurance claim without justification.

3. Defendant is liable to Plaintiff for, but not limited to, the below causes of action and aforementioned remedies, for the reasons stated, which reasons are currently known, upon information and/or belief, and/or will be proven in discovery and/or at trial.

## II.    JURISDICTION AND VENUE

4. This action is instituted pursuant to jurisdiction as codified at *28 U.S.C. §1332(a)*.

5. This Court has jurisdiction in this matter pursuant to *28 U.S.C. §1367*, regarding the principles of pendent and supplemental jurisdiction over related state law claims.

6. Venue in the Eastern District is properly laid pursuant to *28 U.S.C. §1391*, insofar as the alleged unlawful conduct complained of in this Complaint, which forms the factual and legal basis of the Plaintiff's claims, arose within the geographical limits of this District in general, and within the geographical limits of Lehigh County, Pennsylvania, in particular.

## III.    PARTIES

7. Plaintiff Esteban Rivera ("Rivera" or "Plaintiff") is an adult individual residing at all relevant times at 2024 West Green Leaf Street, Allentown, Lehigh County, Pennsylvania 18104.

8. Rivera is a citizen of Pennsylvania.

9. Defendant Progressive Casualty Insurance Company, t/d/b/a Progressive Advanced Insurance Company ("Progressive" or "Defendant") is, upon information and belief, a corporation, partnership, limited partnership, incorporated association, limited liability corporation, limited liability partnership or other business entity authorized to conduct business and to issue policies of insurance in the Commonwealth of Pennsylvania, which regularly conducts business in Lehigh County, Pennsylvania, and which has a principle

place of business at 300 North Commons Boulevard, Mayfield Village, Cuyahoga County, Ohio 44143.

10. Defendant is a citizen of Ohio.

11. At all times, Defendant was acting by and through its agents, servants and/or employees, in the insurance adjusting, investigation and ultimate denial of this claim, who were authorized and acted within the scope of their authority, course of employment and under the direction and control of Defendant.

**IV.    PRE-DISCOVERY FACTUAL ALLEGATIONS**

12. Progressive issued Automobile Policy No. 989868574, Form 9611/Edition (02/16), to Plaintiff for the policy period May 25, 2025 through November 25, 2025 (the "Policy").

13. The Policy provided, *inter alia*, Collision Coverage under Part IV – Damage to a Vehicle, subject to the terms and conditions of the Policy.

14. Plaintiff paid all premiums due and owing, and the Policy was in full force and effect at all relevant times hereto.

15. On or about June 22, 2025, Plaintiff's 2017 Mercedes-Benz GLS63 AMG 4matic (the "Vehicle") was involved in a covered accident resulting in catastrophic damage.

16. The loss constituted a sudden, direct, and accidental loss resulting from collision to a covered auto, as defined by the Policy.

17. The Vehicle was rendered a total loss.

18. The Vehicle was taken from the scene by All Points Towing and remains in its possession to the present-day incurring fees and costs.

19. Plaintiff was unable to reacquire the Vehicle from All Points as it was a total loss and the towing, storage and other costs were not paid by Defendant under the Policy.

20. The Policy's Insuring Agreement – Collision Coverage provides, in relevant part:

"If you pay the premium for this coverage, we will pay for sudden, direct and accidental loss to a covered auto… resulting from collision."

21. During the adjusting of the claim, Progressive has never disputed that:

   a. The Vehicle was a covered auto;

   b. Collision coverage was in effect; or

   c. The total loss of the Vehicle resulted from a collision.

22. Progressive instead denied coverage based on alleged non-compliance with Part VI – Duties in Case of an Accident or Loss, claiming Plaintiff failed to cooperate.

23. Plaintiff promptly reported the loss and provided Progressive with all material information concerning:

   a. The time and place of the accident;

   b. The circumstances of the loss; and

   c. The identity of the driver.

24. Plaintiff provided a recorded statement to Progressive shortly after the loss.

25. When Progressive attempted to expand questioning into irrelevant and improper areas, Plaintiff appropriately requested counsel before continuing with the interview.

26. Any materials requested by Progressive in Plaintiff's custody were provided to Progressive in timely manner.

27. By letter dated September 10, 2025, Progressive indicated that:

We are in the process of investigating the above referenced claim. This claim was reported to Progressive Advanced Insurance Company (hereinafter referred to as "Progressive") on July 5, 2025.

…

The facts of the loss as revealed by the investigation to date indicate that your 2017 Mercedes-Benz GLS63 rear-ended a 2011 Ford F-150. The reported loss location was sr-903 SB, Carbon, PA in Kidder Township. Your vehicle was being driven by Jose Capellan at the time of the incident.

…

So that we may bring this matter to resolution, we are requesting the following items or information from you:

1. A recorded statement with you;
2. Complete contact information, to include full name, address and best phone number, for (A). Jose Capellan;
3. A recorded statement with Jose Capellan;
4. The most recent lease/rental agreement for your policy address (2024 W Greenleaf Street, Allentown, PA 18104)
5. Registrations for all four (4) policy vehicles;
6. Any and all maintenance and mechanical records & receipts, including the most recent Pennsylvania State Inspection, for your 2017 Mercedes-Benz GLS63 from the past twelve (12) months;
7. Complete cellular phone records for your number (XXX) XX-7300, from June 20, 2025 to July 5, 2025. These records must show incoming and outgoing call and text details on company letterhead. If these records are not available, please provide a letter from your cell phone carrier advising of this;
8. The auto loan agreement for your 2017 Mercedes-Benz GLS63;

A true and correct copy of the said correspondence is attached hereto as Exhibit A.

28. On September 12, 2025, the undersigned provided a letter of representation to Progressive indicating that he would be representing Plaintiff concerning this insurance claim.

29. On or about September 30, 2025, Plaintiff's counsel provided Progressive with a comprehensive response to its letter of September 10th, including providing certain documents as requested. A true and correct copy of the said correspondence (without the attachments) is attached hereto as Exhibit B.

30. Through the aforestated correspondence, counsel advised that his client had already given a recorded statement, requested a transcript of the same and advised that nevertheless

Plaintiff would agree to a continuation of the interview under reasonable circumstances (setting forth those circumstances). Counsel further provided the last known address and contact information for the driver of the Vehicle at the time of the accident, advising that Plaintiff had no control over the individual. Finally, Plaintiff's counsel noted that Plaintiff was not possessed of his cellular phone records as he changed providers eliminating his online access to the said account.

31. Progressive did not respond to the September 30th letter, nor did they pay the claim, therefore, on October 23rd, Plaintiff's counsel sent a letter to Progressive requesting an update on the claim. A true and correct copy of the said correspondence is attached hereto as Exhibit C.

32. The claim at this juncture was now more than three (3) months old.

33. By letter dated November 12th (received as noted on November 18th), Progressive finally "responded" to Plaintiff (not counsel despite the foregoing letter of representation and responsive correspondence from the same) with the same general recitation concerning the claim investigation and Policy provisions as previously provided in its letter of September 10th. A true and correct copy of the said correspondence is attached hereto as Exhibit D.

34. Pertinent to this litigation the correspondence requested:

> So that we may bring this matter to resolution, we are requesting the following items or information from you:
>
> 1. A recorded statement with you;
> 2. A recorded statement with Jose Capellan;
> 3. Complete cellular phone records for your number (XXX) XX-7300, from June 20, 2025 to July 5, 2025. These records must show incoming and outgoing call and text details on company letterhead. If these records are not available, please provide a letter from your cell phone carrier advising of this;

> We are requesting this information be provided within the next seven (7)
> days. If we do not receive this information, we may consider your file for
> noncooperation, or make a coverage decision based upon the information
> obtained to date.

Exhibit D, p. 5.

35. On November 18, 2025, counsel for Plaintiff once again provided a comprehensive

    response to Progressive's inquiry. A true and correct copy of the said correspondence is

    attached hereto as Exhibit E.

36. Of import to this litigation, Counsel once again advised concerning Plaintiff's willingness

    to reasonably participate in a continuation of his recorded statement (providing dates of

    availability), advising once again Plaintiff has no control over Mr. Capellan to secure a

    "statement" from him (even if said obligation was Plaintiff's, which it is not) and once

    again advising that Plaintiff did not have his cellular phone records. Exhibit E.

37. The claim at this juncture was now more than four (4) months old.

38. On November 19, 2025, Progressive emailed Plaintiff's counsel. A true and correct copy

    of the said email is attached hereto as Exhibit F.

39. Progressive advised that it would not provide a "copy of the prior statement or the questions

    in advice" and claimed that Plaintiff "still must provide [the cell records] even though [he

    does not] have an account with that provider" nor was in possession of said records. Exhibit

    F.

40. On November 21, 2025, Plaintiff's counsel replied to the email of November 19th. A true

    and correct copy of the said correspondence is attached hereto as Exhibit G.

41. In that correspondence, Plaintiff's counsel advised Progressive that the insurer's refusal to

    provide a copy of the insured's prior recorded statement while simultaneously demanding

    a second recorded statement addressing the same policy information and facts of loss was

wholly improper. Counsel further explained that the insured was not obligated to obtain documents not in his possession or equally accessible to the insurer, including cell-phone records. Counsel further offered a reasonable alternative by permitting Progressive to request records directly through a carrier authorization.

42. On December 3, 2025, receiving no response from Progressive to Plaintiff's counsel's email of November 21st, Plaintiff's counsel once again emailed Progressive concerning the claim. A true and correct copy of the said email is attached hereto as Exhibit H.

43. The claim at this juncture was now more than five (5) months old.

44. On December 5, 2025, Progressive responded:

> We are working getting the transcript. It was only of the insured answering basic policy questions. As to cell phone records it is the insured responsibility to go get them as we are not able to do that because they are in their not and they will be required for us to make an accurate coverage decision.

A true and correct copy of the said correspondence is attached hereto as Exhibit I.

45. On December 9, 2025, Plaintiff's counsel responded to Progressive's December 5th email. A true and correct copy of the said correspondence is attached hereto as Exhibit J.

46. In that correspondence, Plaintiff objected to Progressive's continued and unjustified delay in issuing payment on an undisputed total-loss claim, despite the insured's full cooperation. Counsel asserted that any continued delay—extending for months—was attributable solely to Progressive's inaction and constituted inordinate, unwarranted delay evidencing bad-faith claims handling under Pennsylvania law and demanded immediate issuance of the total-loss payment. Exhibit J.

47. With the expectation of receiving the transcript and moving forward with the continuation of the recorded statement, the final "issue" in the adjusting process Progressive claimed to be missing was "cell phone" records. Id.

48. Plaintiff's counsel advised that despite believing the same were not necessary to the investigation of the claim, Plaintiff offered again to sign a release for Progressive to obtain the cell phone records from Plaintiff's provider[1]. Id.

49. Once again, Plaintiff did not receive a response to his December 9th correspondence and thus was forced to once again reach out to Progressive seeking action on the claim and/or demanding payment of the loss. A true and correct copy of the said correspondence is attached hereto as Exhibit K.

50. In that correspondence, Plaintiff's counsel once again pointed out that Progressive had failed to respond to prior written correspondence and that its continued silence compounded an ongoing failure to act promptly and in good faith on an undisputed total-loss claim. Counsel stated that Progressive had been in possession of all information reasonably necessary to evaluate and pay the claim for months, that the vehicle was indisputably a total loss, and that the insured had fully cooperated by providing a sworn statement and answering all policy-related questions. Despite this, Progressive continued to insist on obtaining cell-phone records without a legitimate coverage basis, even though counsel had offered to execute a release permitting Progressive to obtain any such records directly. Counsel asserted that the claim, pending since June, had been willfully delayed without a reasonable basis, and that Progressive's failure to respond to a prior demand further evidenced bad-faith claims handling. Counsel issued a final demand for payment by a date certain and advised that failure to issue payment or confirm a payment timeline would result in pursuit of all available legal and regulatory remedies. Exhibit K, pgs. 2-5.

51. The claim at this juncture was now more than six (6) months old.

---

[1]See, Exhibit A, p. 5, Progressive's claim " 'Duties in Case of Accident or Loss,' ... A person seeking coverage must: ... 10. Authorize us to obtain medical and other records."

52. On December 15, 2025, Progressive responded to the foregoing communication:

> Currently the claim is pending, and we feel like we don't have enough information to finalize. I have recommended for a coverage denial at this time since you refuse to give a statement and provide the cell phone records we requested.

*Id.*, at pg. 1-2.

53. Plaintiff's counsel immediately responded to Progressive's knowingly false claims concerning the lack of a statement and cell phone records:

> At no time did we refuse to provide a statement…
>
> Likewise, we did not refuse to provide cell phone records…
>
> …
>
> Your statement that you have 'recommended a coverage denial at this time' further confirms that your position is predetermined and not based on any actual failure to cooperate… [your denial of the claim] will be preserved and attached to the forthcoming bad faith claim.

*Id..*, at pg. 1.

54. Again, no response was received from Progressive to the foregoing communication, thus, on December 26, 2025, Plaintiff's counsel sent another request that appropriate action be taken by Progressive consistent with its obligations under the facts of this claim and the applicable law. A true and correct copy of the said correspondence is attached hereto as Exhibit L.

55. Inexplicably, by correspondence dated December 31, 2025, Progressive issued a coverage denial letter, asserting it was "unable to complete its investigation" due to alleged non-cooperation and claiming no coverage under Part IV. A true and correct copy of the said correspondence is attached hereto as Exhibit M.

56. Specifically, Progressive claimed in its denial letter:

> We have been unable to complete our investigation because you have not
> cooperated in providing:
>
> 1. A recorded statement with you;
> 2. A recorded statement with Jose Capellan;
> 3. Complete cellular phone records for your number (XXX) XX-
>    7300, from June 20, 2025 to July 5, 2025. These records must
>    show incoming and outgoing call and text details on company
>    letterhead. If these records are not available, please provide a
>    letter from your cell phone carrier advising of this;
>
> Thus, the Company will not be responsible to pay for any damages to the
> 2017 Mercede[d]-Benz GLS63 AMG under Part VI.

Exhibit M, p. 2-3.

57. Plaintiff's counsel repeatedly advised Progressive of his client's cooperation and willingness to continue to cooperate in the investigation.

58. Progressive never provided a transcript, never identified the purported areas of inquiry, and never scheduled the requested continuation of Plaintiff's recorded statement.

59. Progressive also demanded a recorded statement from Jose Capellan, a third party over whom Plaintiff has no authority or control, which was explained *ad nauseum* to Progressive.

60. Plaintiff nonetheless provided Progressive with Mr. Capellan's last known whereabouts and expressly invited Progressive to arrange any statement directly with Mr. Capellan.

61. Upon information and belief, Progressive never made any effort to arrange an opportunity to communication with Mr. Capellan.

62. Progressive finally demanded cellular phone records from Plaintiff for a multi-week period.

63. Plaintiff advised Progressive that:

    a. He no longer had access to those records;

    b. He had changed providers since the loss; and

    c. The prior carrier was Verizon.

64. Plaintiff agreed to execute an authorization allowing Progressive to obtain the records directly (consistent with its own claimed "duties" of the insured), yet Progressive failed or refused to do so (despite also their recognition of this being an appropriate means of cooperation in the adjusting process.

65. Upon information and belief, Progressive never took steps to acquire an Authorization for Plaintiff to execute to obtain the records.

66. Progressive's insistence that the claim could not proceed without cell phone records— despite a full statement from the insured and no coverage-related dispute—was pretextual, unreasonable, and unsupported.

67. Progressive delayed its investigation for months, repeatedly re-requesting the same information already addressed and ignoring Plaintiff's substantive responses, all the while causing Plaintiff considerable expense.

68. Progressive's position is factually false, legally incorrect, and contrary to Pennsylvania law warranting the requested relief found herein, including an adjudication of bad faith.

## V.  CAUSES OF ACTION

### COUNT I
### DECLARATORY JUDGMENT PURSUANT TO 42 PA. C.S.§ 7531 *ET SEQ.*
### Plaintiff Esteban Rivera v. Progressive Casualty Insurance Company

69. Plaintiff incorporates by reference the above paragraphs 1 through 68 above as if the same were set forth at length herein.

70. This Count is brought pursuant to the Pennsylvania Declaratory Judgments Act, *42 Pa. C.S. § 7531 et seq.*, which authorizes courts of record to declare rights, status, and other legal relations whether or not further relief is or could be claimed.

71. At all times relevant hereto, Plaintiff was the named insured under a motor vehicle insurance policy issued by Defendant

72. The insurance policy constituted a valid and binding contract between Plaintiff and Defendant and provided, inter alia, coverage for certain losses arising from damage to Plaintiff's motor vehicle, subject to the terms, conditions, limitations, and exclusions contained therein.

73. During the policy period, Plaintiff sustained a covered loss involving his insured motor vehicle and timely submitted a claim to Progressive in accordance with the policy requirements.

74. Plaintiff complied with all material terms, duties, and conditions precedent required under the policy, including providing notice of the loss and cooperating with the insurer's investigation.

75. Despite Plaintiff's compliance with the policy and the occurrence of a loss covered thereunder, Progressive failed and/or refused to pay the benefits owed under the policy.

76. Progressive has taken the position that the loss claimed by Plaintiff is not payable, or otherwise has refused to provide coverage or benefits required under the policy.

77. As a result of Progressive's refusal to pay the claim, an actual, present, and justiciable controversy exists between Plaintiff and Progressive concerning their respective rights and obligations under the insurance policy.

78. The controversy is direct and substantial, and it presently affects Plaintiff's legal rights and interests, including his right to receive insurance benefits due under the policy.

79. Plaintiff contends that the policy affords coverage for the loss at issue and that Progressive is contractually obligated to indemnify Plaintiff for the damages sustained.

80. Progressive disputes, denies, or otherwise refuses to acknowledge its obligation to provide such coverage or payment.

81. Pursuant to *42 Pa. C.S. § 7531 et seq.*, Plaintiff seeks a judicial declaration determining the rights and obligations of the parties under the policy.

82. A declaratory judgment will serve a useful purpose in clarifying and settling the legal relations in issue and will terminate the uncertainty and controversy giving rise to this proceeding.

**WHEREFORE**, the Plaintiff, Esteban Rivera, seeks a determination from this Court that Defendant is obligated to pay for the Loss and attendant damages, pursuant to the terms of the Insurance Policy and the actions of the parties, as well as for interest, costs, and other amounts as the law may allow.

## COUNT II
## BREACH OF CONTRACT
**Plaintiff Esteban Rivera v. Progressive Casualty Insurance Company**

83. Plaintiff incorporates by reference the above paragraphs 1 through 82 above as if the same were set forth at length herein.

84. Plaintiff chose, purchased and paid for coverage to insure against losses sustained as a result of the aforesaid motor vehicle accident.

85. He chose, purchased and paid for that insurance coverage with Defendant.

86. Defendant agreed to provide Insurance Coverage to Plaintiff by accepting Plaintiff's premium payments.

87. The Policy provided for covered losses due to, among other categories, motor vehicle accidents causing damage to the covered Vehicle and resultant expenses related thereto.

88. Plaintiff made a timely claim to Defendant for payment of losses covered by the aforesaid Policy.

89. Plaintiff fully and reasonably participated in the adjusting process and provided Defendant with support for each of his claimed losses.

90. To date, Defendant has wrongfully refused and/or failed to pay related losses, reasonable and necessary, relating to and arising from the aforesaid automobile accident.

91. Plaintiff is entitled to receive payment for said losses and attendant costs related thereto.

92. Plaintiff is further entitled to receive timely and full payment for those losses in order to repair or replace his Vehicle (for which he has lost months of use value).

93. Defendant's failure and/or refusal to pay Plaintiff for the losses suffered as a result of the insurable event is a breach of the material terms of the applicable Policy.

94. Defendant's failure and/or refusal to pay Plaintiff for the losses suffered as a result of the motor vehicle accident breach the obligations of Insurers to their Insured.

95. Defendant's failure and/or refusal to timely and reasonably pay costs associated with the Insured loss, by way of example only, All Points Towing storage bill, is a breach of the material terms of the applicable Policy.

96. Defendant's failure and/or refusal to timely and reasonably adjust any such claim breached the obligations of Defendant to Plaintiff under the Policy.

97. Plaintiff has met all his obligations under the Policy.

98. Plaintiff therefore is entitled to and herein seeks payment of the aforesaid direct and consequential losses attributable to Defendant's breach, including but not limited to: failing to timely pay for the damages caused by the motor vehicle accident under the applicable Policy.

99. The Defendant's failure to pay for the aforesaid losses violates and breaches the terms of the Policy and contractual obligations to its insured, the Plaintiff herein.

100.    Defendant has no reasonable or legal basis under Pennsylvania or other applicable law, to refuse, fail or deny payment of the suffered loss suffered to Plaintiff as a result of the motor vehicle accident.

101.    Further, in every contract entered into and performed in the Commonwealth of Pennsylvania there is an implied covenant of good faith and fair dealing.

102.    There is an implied covenant of good faith and fair dealing between Plaintiff and Defendant regarding the instant matter.

103.    By failing and refusing to adequately and timely compensate Plaintiff for his covered losses, Defendant has breached the implied covenant of Good Faith and Fair Dealing, and consequently the Insurance Agreement between the parties.

104.    As a result of Defendant's breach of its duties under the foregoing Policy and Pennsylvania law, Plaintiff has suffered and continues to suffer actual and consequential damages, as more fully set forth above and/or as proven through discovery.

**WHEREFORE**, the Plaintiff, Esteban Rivera, demands judgment against the Defendant in this cause of action for an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), the limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, as well as for interest, costs, and other amounts as the law may allow.

## COUNT III
### BAD FAITH PURSUANT TO *42 Pa. C.S. §8371, et. seq.*
### Plaintiff Esteban Rivera v. Progressive Casualty Insurance Company

105.    Plaintiff incorporates by reference the above paragraphs 1 through 104 above as if the same were set forth at length herein.

106.    Plaintiff's Policy with Defendant covers losses sustained as a result of the aforesaid motor vehicle accident.

107.    An insurer must act with the utmost good faith towards its insured.

108.    Insurers must cover insureds for the full and fair value of their loss.

109.    Defendant has failed and/or refused to fully, timely and reasonably compensate Plaintiff for his losses as a result of the motor vehicle accident.

110.    The aforesaid actions and inactions of Defendant (as set forth hereinabove) constitute bad faith in that Defendant:

a.  Refused and /or failed to evaluate and pay Plaintiff's claim for losses covered under his policy of insurance in a timely manner;

b.  Had no reasonable basis for denying payment of all or part of the claimed losses;

c.  Forced Plaintiff to incur attorney's fees and costs to pursue his rights under the Policy and applicable law;

d.  Forcing Plaintiff to file suit to recover such benefits;

e.  Failed to adopt and implement reasonable standards for prompt investigation and payment of loss claims;

f.  Failed to exercise the utmost good faith and discharge of its statutory and contractual duties to Plaintiff;

g.  Engaged in unfair claims settlement and insurance practices, in violation of the common law and Defendant's statutory obligations;

h.  Failed to accord the interests of its insured the same faithful duty it gave to its own interests;

i.  Failed to meet its duty of good faith and fair dealing;

j.  Engaged in a frivolous faulty and unfounded refusal to pay the losses;

k.  Failed to comply with the provisions of Pennsylvania Insurance Law;

l.  Engage in conduct which constitutes unfair insurance practices, and engaged in unfair and deceptive acts and practices in the business of insurance, as set forth hereinabove, and

m.  Failing to adopt and implement reasonable standards for investigation and handling of loss claims; refusing to pay covered claims without reasonable investigation; failing to attempt in good faith to settle and pay portions of covered claims; and compelling Plaintiff to institute litigation to secure payment for his claim; all in violation of Pennsylvania Law.

111.  Defendant knew or reasonably should have known of the violations set forth hereinabove.

112.  Defendant denied Plaintiff's claim and failed to pay his claim without a reasonable factual or legal basis to do so, further harming Plaintiff.

113.  As a result of the Defendant's bad faith conduct, Plaintiff is entitled to and seeks to recover damages as set forth in *42 Pa. C.S.A. §8371*, and under the law, as follows (together with those damages set forth above):

a.  Interest on the claimed loss benefits owed in the amount equal to the prime rate of interest plus three percent;

b.   Punitive (treble) damages against Defendant; and

c.   Reasonable counsel fees and court costs incurred by Plaintiff in prosecuting this action
     as well as the aforesaid claim for covered loss benefits.

**WHEREFORE**, the Plaintiff, Esteban Rivera, demands judgment against the Defendant
in this cause of action for an amount in excess of One Hundred and Fifty Thousand Dollars
($150,000.00), the limit for arbitration in the Federal District Court for the Eastern District of
Pennsylvania, as well as for punitive/treble damages, interest, counsel fees and costs, and other
amounts as the law may allow.

## VI.    OTHER

114.   Plaintiff respectfully requests a jury to deliberate upon the within causes of action.

115.   The within case is not subject to arbitration.

116.   Where permitted, the Plaintiff demands reasonable legal fees, costs, interest, expenses,
       delay damages, compensatory damages, punitive damages and any other damages
       deemed appropriate by the Court or authorized by law.

Respectfully Submitted:
KAROLY LAW FIRM, LLC

Dated: March 9, 2026                    BY: _____

John P. Karoly III, Esquire
Pa. I.D. No. 204531
527 West Hamilton Street
Allentown, PA 18101
(610) 437 – 1252
(610) 437 – 3738 (facsimile)
jp.karoly@karolyfirm.com
Attorney for Plaintiff